UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VALPAK DIRECT MARKETING
SYSTEMS, INC.,

    Plaintiff,

v.                                                CASE NO: 8:06-cv-347-T-26EAJ

ROBERT B. HYDE, II and MARK HYDE,

    Defendants.
_____/

## **O R D E R**

Before the Court is Plaintiff's Motion for Summary Judgment, the Statement of Undisputed Facts (Dkt. 54 & 55), and Defendants' Response. (Dkt. 60). After careful consideration of the Motion, the Response, the applicable law, and the entire file, the Court concludes that the Motion should be granted and judgment entered against Defendants on the Complaint and Counterclaim.

### **The Agreements between the Parties**

Defendants Robert and Mark Hyde entered into a Franchise Agreement with Valpak Direct Marketing Systems, Inc. (Valpak), on June 14, 1999, for various territories in Louisiana including Baton Rouge. (Dkt. 55 at Exh. B). In May of 2002, the Franchise Agreement was amended to expand the territory to include New Orleans. (Dkt. 55 at Exh. D). On March 30, 2004, the Hydes in a Bill of Sale sold to Valpak all the assets, properties and rights necessary for the operation of their Valpak business in New Orleans.

(Dkt. 55 at Exh. E).  On October 15, 2004, the Hydes gave Valpak a Promissory Note in the amount of $312,382.08.  (Dkt. 55 at Exh. F).  Approximately one year later on October 17, 2005, Valpak terminated the Franchise Agreement pursuant to a written Termination Agreement, because the Hydes owed substantial payables to Valpak for printing, mailing, and related expenses totaling over $400,000.00.  (Dkt. 55 at Exh. H & A at para. 8).  The effective date of the Termination Agreement was October 24, 2005.

     Pursuant to the terms of the Termination Agreement, the Hydes acknowledged their indebtedness in the amount of $437,769.91, which included $267,337.50 owed on the Promissory Note and the balance on printing, mailing and other charges attendant to the production and distribution of Valpak envelopes.  (Dkt. 55 at Exh. H at para. 2 & Exh. J at para. 5).  The Hydes also agreed to comply with the non-compete provision of the Franchise Agreement, which provides as follows:

> 13.4.  <u>Covenant Not to Compete</u>.  FRANCHISEE (and each Owner) agrees that for a period of two (2) years commencing on the effective date of termination, expiration or upon any Transfer which the meaning of the term as used in Section 11.2 hereof (the "Covenant Period"), FRANCHISEE (and each owner) shall not have any direct or indirect interest as an owner, investor, partner, lender, director, officer, employee, consultant, representative or agent, or in any other capacity, in any Competitive Business operating within the Territory, except for (I) other VAL-PAK franchises pursuant to agreements with COMPANY; and (ii) the ownership for investment purposes of publicly traded securities that represent one percent (1%) or less of the number of outstanding shares of that class of securities.

(Dkt. 55 at B at pg. 23).  The Termination contained the following release provision:

> 17. You hereby acknowledge and agree that the termination of the Franchise has been properly effected, and you hereby indemnify, release and hold COMPANY and each of its affiliates, and all of their respective officers, directors, employees and agents, harmless from any and all claims, demands, liabilities or causes of action which you, or any third party may otherwise have, whether by contract, at law, in equity or otherwise.

(Dkt. 55 at H at pg. 5).

As of the date of Valpak moved for summary judgment, the Hydes owed $57,532.20 on regular accruals of mailing, printing, and related expenses, and $267,337.50 on the principal for the Promissory Note. (Dkt. 55 at Exh. J at para. 7). With respect to the violation of the non-compete clause, in January of 2006, the Hydes presented several purchase orders for advertising to be placed in Valpak envelopes which aroused suspicion in Valpak's overseer of the transition of the ownership. (Dkt. 55 at Exh. I at paras. 2 & 3). The Hydes acknowledged they were sales representatives of Red Stick Media, a new venture owned by Robert Hydes' wife, Sue Durbin Hyde. (Dkt. 55 at Exh. I at para. 3). Mrs. Hyde started the business subsequent to the Termination Agreement. (Dkt. 55 at Exh. I at para. 3). Several of the advertisers were clients of the Hydes' former Valpak franchise. (Dkt. 55 at Exh. I at para. 4). Sue Durbin Hyde, as admitted by the Hydes in their response, published at least one issue of Go Gumbo magazine showed distribution in the area of their former Valpak territory. (Dkt. 55 at Exh. I at para. 5 & Dkt. 60). The contact information for Red Stick Media and for Go Gumbo magazine listed the numbers for Robert Hyde. (Dkt. 55 at Exh. I). Salespersons working for Valpak observed the Hydes calling on former Valpak clients at pertinent

times. (Dkt. 55 at Exh. I at para. 6). On March 30, 2006, this Court entered a Consent Preliminary Injunction which restrained the Hydes from soliciting or accepting direct mail advertising from specific clients listed. (Dkt. 18).

### Breach of the Non-compete Clause

The Court finds that the record supports a finding that the Hydes violated the two-year non-compete agreement found in the Franchise Agreement and continued by the Termination Agreement. The Consent Preliminary Injunction already in place expires by its own terms on October 24, 2007, which is two years from the Franchise Agreement's termination date. Thus, the Court hereby converts the Consent Preliminary Injunction into a permanent injunction, finding that all factors warranting permanent injunction relief have been met. Permanent injunctive relief shall expire on October 24, 2007.

### Breach of the Franchise Agreement

Although the Hydes were released from their indebtedness to Valpak under the Franchise Agreement in the Termination Agreement, the release was conditioned upon the Hydes' compliance with the Termination Agreement. The Court finds that the record shows by competent, substantial evidence that the Hydes did not comply with the terms of the Termination Agreement and therefore owe Valpak damages under the Franchise Agreement. The amount due and owing at the time the summary judgment motion was filed was $57,532.00, for which Valpak waives prejudgment interest on the amount due. (Dkt. 54 at fn. 3).

### Breach of the Promissory Note

With respect to the Promissory Note, as was the case with the Franchise Agreement, the Hydes failed to comply with the terms of the Termination Agreement. The Court finds that the record supports a finding that the Hydes failed to pay the amount due and owing under the Promissory Note. The principal amount now due and owing under the Note is $267,337.50, for which Valpak seeks prejudgment interest at 18% per year from the date this action was filed, March 3, 2006. (Dkt. 54 at pg. 8 and fn. 4).

### Release of Claims and Waiver of Defenses

The Hydes released any claims of fraud in the release which was a part of the March 2004 Bill and Sale as well as the Termination Agreement. There are no allegations that any fraud occurred after the dates of those two agreements. With respect to the defenses asserting lack of personal jurisdiction, venue, and inconvenient forum, the terms of the Franchise Agreement place exclusive jurisdiction in the Middle District of Florida. In any event, the Hydes filed a counterclaim and consented to an injunction which constitutes a waiver of the ability to challenge jurisdiction or improper venue. See Stavang v. American Potash and Chemical Corp., 344 F.2d 117, 118-119 (5th Cir. 1965). Finally, with respect to the counterclaim, Robert Hyde testified in his deposition that he was abandoning the counterclaim, and both the Hydes answered an interrogatory that they were electing to withdraw their counterclaim. (Dkt. 55 at Exh. D at pgs. 69-70; Exh. G at answer 10— "The Hydes have agreed to dismiss their defamation claim against Valpak.").

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Dkt. 54) is **GRANTED.**

(2) A judgment for money damages shall be entered in the amount of $57,532.20 on count I.

(3) A judgment for money damages shall be entered in the amount of $267,337.50, with prejudgment interest at 18% per year accruing since March 3, 2006, on count II.

(4) The Consent Preliminary Injunction is converted into a permanent injunction. Defendants shall continue to abide by its terms and provisions until its expiration date of October 24, 2007.

(5) The counterclaim is hereby dismissed with prejudice.

(6) The Clerk shall enter judgment in favor of Plaintiff and against Defendants on all counts of the Complaint.

**DONE AND ORDERED** at Tampa, Florida, on February 6, 2007.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Defendants, pro se